# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

KEVIN V. BYNG,

         Plaintiff,

  v.            6:13-CV-733
                (MAD/ATB)

DELTA RECOVERY SERVICES,
LLC, et al.,

         Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

KEVIN V. BING
Plaintiff, pro se

ANDREW T. BAXTER, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

  The Clerk has sent to the court a civil rights complaint, together with an application to proceed in forma pauperis ("IFP"), filed by pro se plaintiff, Kevin V. Byng. (Dkt. Nos. 1, 2).

**I.** **IFP Application**

  A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). This court agrees, and finds that plaintiff is financially eligible for IFP status.

  In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)

-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II. <u>Complaint</u>

Plaintiff alleges that he is "physically disabled," has mental health problems,

and a history of alcohol and cocaine abuse. (Compl. ¶¶ 4-5) (Dkt. No. 1). Plaintiff alleges that on January 4, 2011, while he was on parole, he successfully completed a six-month, intensive, residential, inpatient, substance abuse program at Insight House in Utica, New York. (Compl. ¶ 5). Plaintiff states that he was "doing well," and he "agreed" to continue his treatment at defendant Delta Recovery Services, LLC ("Delta House"). He entered Delta House the same day. (Compl. ¶ 6).

Plaintiff alleges that Delta House is a New York State Office of Alcoholism and Substance Abuse Services ("OASAS") – "licensed treatment facility," having obtained its license in 2005. (Compl. ¶ 7). Plaintiff states that Delta House was certified as a Congregate Care Level 2 ("CCL2") Residential Treatment Program facility, which means that it is required to provide residents with daily housing, meals, counseling, and medical/mental health services "like Insight House." (*Id.*) The complaint contains several paragraphs discussing how Delta House allegedly overcharges for rent, based upon its license and upon the services it renders to residents.[1] (Compl. ¶¶ 8-14).

The crux of the complaint is that on January 13, 2011, defendant Wood (the alleged owner of Delta House) came into plaintiff's room to tell plaintiff that he would give plaintiff a lamp. (Compl. ¶ 15). Plaintiff states that he "went and took a shower" and came back into the room, naked. (*Id.*) Defendant Wood apparently came back

---

[1] These paragraphs do not appear to have any relevance to the claims in the complaint, although plaintiff states in the "Previous Lawsuit" section of the complaint that he brought a previous Small Claims Court action against Delta House for "unused rent." (Compl. ¶ 3). Plaintiff states that on May 30, 2013, he signed a Stipulation and General Release Letter, accepting an offer of $179.58 in exchange for withdrawing his claim and his agreement not to sue Delta House in city, county, or state court over the amount. (*Id.*) Plaintiff alleges that as of June 18, 2013, he had not received the money from Delta House, but does not include any such claim in this action.

into plaintiff's room with the lamp, and when he saw that the plaintiff was naked, closed the door, unzipped his pants, pulled out his penis, and told plaintiff to "'suck it.'" (Compl. ¶ 16). When plaintiff refused, defendant Wood threatened to call "parole" and report that plaintiff had violated his parole by drinking alcohol so that he would be sent back to prison. (Compl. ¶ 16). Because of this threat and the fear of returning to prison, plaintiff "reluctantly . . . masturbated him" with his right hand. (Compl. ¶ 17). Defendant Wood allegedly told plaintiff that if he told anyone about the incident, defendant Wood would call the police and parole, claim that plaintiff was drinking, and that plaintiff "assaulted [Wood]." Wood told plaintiff that he would go back to prison where he belonged. (*Id.*)

Plaintiff claims that he was so "ashamed, embarrassed, and worried," that he got dressed and immediately left Delta House, forgetting his keys. (Compl. ¶ 18). Plaintiff states that he went to the bank, withdrew money, and unfortunately relapsed, drinking alcohol and using cocaine. (*Id.*) Plaintiff claims that because he forgot his keys to Delta House, he could not get back in, and no one would answer the door, so that he was "homeless, freezing in the cold, [and] without his mental health medications." (Compl. ¶ 19). Plaintiff states that he spent most of his money and kept using cocaine and drinking for the next few days. (*Id.*)

On January 17, 2011 plaintiff walked over to Delta House, and Mr. Wood's assistant let him in, but told plaintiff that he was "kicked out per Mr. Wood." (Compl. ¶ 20). Plaintiff states that the assistant then called Mr. Wood on the telephone. (Compl. ¶ 20). Plaintiff spoke to Wood, asked him for the balance of plaintiff's

4

unused rent, and asked Wood where plaintiff "was supposed to go." (*Id.*) Plaintiff claims that Wood told him that he could not have his money, if he caused any trouble, Wood would call the police, and he did not care where plaintiff went. (*Id.*) Plaintiff states that Delta House never called "parole" to tell them that plaintiff had been evicted, nor was plaintiff told that "there was a Utica Rescue Mission Emergency Shelter . . . as required." (*Id.*)

Plaintiff states that he took his clothes, but claims that Mr. Wood took his keys, including the key to his post office box, and his mental health medications. (Compl. ¶ 21). Plaintiff states that he was homeless, afraid, hungry, anxiety ridden, confused, and depressed. He spent the last of his money, continuing to drink and use cocaine for days. He had no medication and "virtually no sleep." As a result he "regrettably committed a stupid, non-violent substance abuse larcenious [sic] offense on January 20, 2011 to get more money for cocaine." (*Id.*)

Plaintiff states that he was arrested on the same day by the UPD (Utica Police Department) and "parole." (Compl. ¶ 22). Plaintiff states that he was "violated" for "allegedly leaving Delta House." He was sent to Groveland Correctional Facility for ninety (90) days. Plaintiff claims that he could not "get out of his head" everything that Mr. Wood had done to him, "especially on January 13, 2011." (Compl. ¶ 23). Plaintiff claims that when he "came home" after the ninety day period of incarceration, he "eventually relapsed again and remorsefully committed another substance abuse related offense." (*Id.*)

Plaintiff claims that his lawyer was "lazy, ineffective, and did not get [him] a

Drug Court plea." (Compl. ¶ 24). Plaintiff apparently pled guilty to the January 20, 2011 "non-violent substance abuse related offense" that he "committed because of Mr. Wood . . . ." (*Id.*) Plaintiff then engages in some calculations regarding the amount of time he had left on his original sentence and the consecutive time he received on the new sentence and claims that, because the resulting time he had left to serve was greater than seven years, he was "unfortunately sent to the infamous Attica Correctional Facility," a maximum security facility, instead of being sent to a medium security facility like Groveland. (Compl. ¶¶ 24-26).

Plaintiff describes his incarceration in Attica, stating that he has had to live in dirty, germ-ridden cell, with a "vicious murderer and serial killer. (Compl. ¶¶ 27-28). He also alleges that he has been regularly harassed, threatened, and was ultimately assaulted by "a pack" of corrections officers. (Compl. ¶¶ 28-29). Plaintiff claims that it is "all a direct result of Delta House's overall egregious conduct." (Compl. ¶¶ 26-29).

The complaint contains three causes of action:

(1) Defendants' conduct violated plaintiff's constitutional right to be free from cruel and unusual punishment by violating New York State Mental Hygiene Law §§ 19.07(e), 32.07(a) and OASAS Operating Regulations §§ 819.2(a)(3), (b)(1), (b)(5), (b)(8); 853.20(a), (c)(2), (c)(5); 853.28(a)(1), (a)(1)-(3), (a)(6)-(8), (a)(14), (a)(16). (Compl. ¶ 35).

(2) Defendants violated plaintiff's constitutional right to Equal Protection. (Compl. ¶ 36).

(3) Defendants' conduct violated plaintiff's rights under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. (Compl. ¶ 37)

Plaintiff seeks $150,000.00 in damages. (Compl. ¶ 38).

6

## III. State Action

### A. Legal Standard

In order to state a claim under section 1983, plaintiff must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed "under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). The law does not reach private conduct, no matter how "discriminatory or wrongful." *Id.* (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). *See Sclafani v. Spitzer*, 734 F. Supp. 2d 288, 297 (E.D.N.Y. 2010) (citing *Brentwood Academy v. Tennessee*, 531 U.S. 288 (2001); *United States v. Morrison*, 529 U.S. 598, 691 (2000)).

To establish state action, the deprivation must be caused by the exercise of action by the State or by a person for whom the state is responsible, and the party charged with the deprivation must be a person who may fairly be said to be a state actor. *West v. Atkins*, 487 U.S. 42, 49 (1988). The actions of a nominally private entity are attributable to the state when:

> (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ('the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate,' or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

*Sybalski v. Independent Group Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Brentwood Academy v. Tennessee*, 531 U.S. at 296) (brackets in original)).

7

## B. Application

Plaintiff has brought this action, in part, under section 1983. Defendant Delta House is a private corporation. Plaintiff appears to claim that because Delta House is licensed by OASAS, (a New York State agency), and is bound by its regulations and by New York State Mental Hygiene Law, it and defendant Wood are acting under color of state law. However, plaintiff is incorrect.

It has been held that licensing by the state alone does not render the licensee a state actor. *White v. St. Joseph's Hospital*, 369 F. App'x 225, 226 (2d Cir. 2010). In *Sybalski v. Independent Group Home Living Program, Inc.*, the Second Circuit held that a group home and its employees were not state actors for purposes of section 1983, notwithstanding that the group home was subject to regulation, licensing, and oversight by the commissioner of mental retardation and developmental disabilities. 546 F.3d at 257-59. The court found that while the state had established substantive rights for the patients in mental health facilities and procedures for protecting those rights, without more, those actions did not amount to "'significant encouragement,' 'willful particip[ation],' or state 'entwining.'" *Id.* at 258. The court also held that care for the mentally ill was not traditionally reserved for the state, and thus, state action would not be found under the "public function" test. *Id.* at 259-60.

In *Velez v. SES Operating Corp.*, No. 07 Civ. 10946, 2008 WL 2662808, at *2 (S.D.N.Y. July 3, 2008), the court dismissed all section 1983 claims and stated that the fact that defendants operated a drug and alcohol rehabilitation facility "treating many patients who as a condition of their parole and/or criminal guilty plea undergo some

8

drug and alcohol treatment" was not sufficient to confer state action on the facility. Plaintiff in this case alleges only that the defendant Delta House was licensed by OASAS in 2005, and because of its certification was required to provide certain services to its patients. Plaintiff focuses more on the fact that he was overcharged[2] for rent and services based on an improper classification than on the alleged conduct of Mr. Wood under color of the OASAS regulations. (*See* Compl. ¶¶ 7-13).

In *Braswell v. Community Solutions, Inc.,* No. 3:11-CV-1043, 2013 WL 663621, at *3-4 (D. Conn. Feb. 4, 2013), the court held that Community Solutions, Inc. ("CSI"), the private owner of a residential work-release program acted under color of state law. *Id.* The court noted that there was no single test for determining whether state action was present. *Id.* at *3. The court may use several approaches, including the "public function," "state compulsion," "nexus," and "joint action tests." *Id.* (citing *McCullum v. City of Philadelphia*, No. CIV. A. 98-5858, 1999 WL 493696, at *2 (E.D. Pa. July 13, 1999)). The court cited numerous cases, holding that privately run prisons were considered state actors for purposes of section 1983. *Id.* at *4 (citations omitted). One of the main reasons for these holdings is that the function of incarcerating people, whether publicly or privately, is the "'exclusive prerogative of the state.'" *Id.* (citing *McCullum*, 1999 WL 493696, at *3 (quoting *Giron v. Corrections Corp. of America*, 14 F. Supp. 2d 1245, 1249 (D.N.M. 1998)).

The *Braswell* court then stated that although CSI was not a private jail, plaintiff had plausibly alleged state action because CSI performed the "state function of

---

[2] As stated above, plaintiff is not suing over the overcharging issue because he has already resolved the claim in state court.

incarcerating prisoners." 2013 WL 663621, at *4. CSI was a residential "work-release" program. The Department of Corrections sent inmates to CSI to receive supervision, treatment, and services. Inmates were subject to removal and return to prison. *Id.* In a footnote, the court distinguished *Velez*, stating that the private drug and alcohol treatment center in *Velez* happened to serve a number of clients who were required to seek treatment as a condition of their parole. *Id* at *4 n.5. There was no allegation in *Velez* that the State *sent* the clients to the facility, that they were supervised around the clock, or that there was any interrelationship between the state and the center.

Instead, the court likened CSI to the facility in *Lemoine v. New Horizons Ranch and Center*, 990 F. Supp. 498 (N.D. Tex. 1998) where the court found state action. The facility in *Lemoine* was a private juvenile residential treatment center that had a contract with the state to provide care on a 24-hour basis, the inmates were sent to the facility by the state and held there on an ***involuntary*** basis. *Braswell*, 2013 WL 663621, at *4. *See also Johnson v. White*, No. 06 Civ. 2540, 2010 WL 3958842, at *4 & n.5 (S.D.N.Y. Sept. 9, 2010) (finding that defendant waived the state action argument, but finding in dicta that the defendant rehabilitation facility was a state actor because the plaintiff was sent there as an "alternative" to incarceration, the facility was fulfilling the role of the Department of Correctional Services, and the inpatient treatment was an outgrowth of the criminal sentence).

This case is distinguishable from *Braswell*, *Lemoine*, and *Johnson*. Delta House is similar to the private rehabilitation center in *Velez*. Plaintiff states that he

10

completed a six month stay at Insight House and then *agreed* to go to Delta House. It is clear from the complaint that he was not *sent* to Delta House involuntarily. Plaintiff was paying rent to stay at Delta House, he had keys to the house so he could come and go as he pleased, and he had a bank account outside the center from which he claims that he withdrew his money to purchase alcohol and cocaine after the alleged incident with Mr. Wood. It also appears that there were other residents of Delta House who were not parolees. Finally, the treatment of the mentally disabled is not a function traditionally or exclusively reserved to the state. *Sybalski*, 546 F.3d at 259. Thus, the "public function" test for state action was not met in the case of a group home for individuals with mental disabilities. *Id.* The same would be true for those patients who have the additional problem of drug and alcohol abuse.

This court finds that Delta House is not a "state actor" for purposes of section 1983, and will recommend dismissal of plaintiff's claims to the extent that they purport to be based on section 1983.[3] This includes both plaintiff's first cause of

---

[3] The court would also note that plaintiff also mentions some New York State statutes and regulations in conjunction with his constitutional claims. He appears only to be listing these statutes to tell the court all the laws that defendant Wood violated by sexually assaulting him. Plaintiff cites N.Y. Mental Hygiene Law § 19.07 which provides the "scope of responsibilities" of the office of Alcoholism and Substance Abuse Act. In *Johnson v. White*, 2010 WL 3958842, at *7 the court held that there is no private right of action under section 19.01 of the New York Mental Hygiene Law. *Id.* Section 19.01 is the statement of policy underlying the Alcoholism and Substance Abuse Act. *Id.* Neither section would afford plaintiff a private right of action. Plaintiff also cites section 32.07, which states the regulatory powers of the commissioner. There is no indication that this section would afford plaintiff a private right of action. The regulations cited by plaintiff are based on the powers afforded to the Commissioner to regulate residential treatment centers. N.Y. Code R. & Regs. tit. 14, §§ 819.2 (standards applicable to all residential service providers); 853.20 (applicability of regulations – who can use certain titles); 853.28 (affidavit of ethical principles).

action for cruel and unusual punishment[4] and his second cause of action for an equal protection violation.[5]

## IV. ADA Claims

### A. Legal Standards

The ADA contains three titles: Title I relates to discrimination in employment (42 U.S.C. § 12112(a)); Title II relates to public services and public entities (42 U.S.C. § 12132); and Title III reaches discrimination by public accommodations and services operated by private entities (42 U.S.C. § 12182). Plaintiff is not complaining about discrimination in employment, so either Title II or Title III would be the only applicable sections of the ADA upon which plaintiff could base a claim.

To prove a violation of Title II, the plaintiff must establish that he is a qualified individual with a disability, that he was excluded from participating in a public entity's services, programs or activities or was otherwise discriminated against by a

---

[4] The court notes that plaintiff alleges "cruel and unusual punishment," however, he was not incarcerated at the time of the alleged violations. For those individuals who have been convicted and are serving a term of imprisonment, the Eighth Amendment serves as the primary source of substantive protection. *Towsley v. Frank*, No. 5:09-CV-23, 2010 WL 5394837, at *5 (D. Vt. Dec. 28, 2010). However, courts have applied the Fourth Amendment or substantive due process to claims of excessive force in the case of a parolee. *Id.* at *5-7 (citations omitted). Because there is no state action in this case, the source of any constitutional protection is not relevant to this court's recommendation.

[5] In any event, the Equal Protection Clause of the Fourteenth Amendment requires that the government treat all similarly situated people alike. *Nicholas v. Tucker*, 114 F.3d 17, 20 (2d Cir. 1997). Generally, the equal protection clause has been "concerned with governmental 'classifications that affect some groups of citizens differently than others.'" *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). Although plaintiff states that he has been denied "equal protection" because "similar people in similar situations should receive similar treatment," there are no facts stated in the complaint to indicate that he was similarly situated to any one or that someone else was treated differently than he was. He does not state an equal protection claim under any interpretation of the complaint.

12

public entity, and that the exclusion or discrimination was due to disability. *Klaes v. Jamestown Bd. of Public Utilities*, No. 11-CV-606, 2013 WL 1337188, at *12 (W.D.N.Y. Mar. 29, 2013) (citing *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003)). Under Title III, in addition to showing that he is an individual with a disability, the plaintiff must show that the defendant owns, leases or operates a place of public accommodation, and the defendant discriminated against plaintiff within the meaning of the ADA. *Krist v. Kolombos Rest., Inc.*, 688 F.3d 89, 94-95 (2d Cir. 2012). However, Title III of the ADA authorizes private actions only for injunctive relief, not monetary damages. *Id.* at 94 (citing *Powell v. Nat'l Bd. of Medical Examiners*, 364 F.3d 79, 86 (2d Cir. 2004)).

### B. Application

Plaintiff in this case is asking only for money damages, and cannot ask for injunctive relief because he is no longer at Delta House. Thus, even if plaintiff somehow had alleged discrimination under Title III, the claim would have to be dismissed.

Plaintiff also fails to state a claim under Title II of the ADA. The ADA defines public entity as (1) a State or local government; (2) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (3) the National Railroad Passenger Corp, and any commuter authority as defined in section 24102(4) of Title 49 of the United States Code. 42 U.S.C. § 12131(1)(A)-(C). Delta House is a privately-owned facility, thus, plaintiff cannot show that his claim is against a "public entity" as defined in the statute.

13

Finally, even assuming that plaintiff was a "qualified" individual with a disability for purposes of the statute, plaintiff states no claim under the ADA. Plaintiff alleges that defendant Wood sexually assaulted him, and that he was so upset that plaintiff left Delta House without his keys. He could not get back in without his keys, and this apparently caused plaintiff to return to the abuse of alcohol and cocaine. There is no indication that the alleged behavior by defendant Wood was caused by, or was in any way related to, plaintiff's alleged disability. Plaintiff's exclusion or eviction from Delta House was caused because he left and broke the rules, not because of his alleged disabilities. Even giving plaintiff's complaint every benefit of interpretation, plaintiff's exclusion from Delta House was the vindictive conduct of defendant Wood, but there are no facts stated that would even imply that Mr. Wood's conduct was based on plaintiff's disability or disabilities. Thus, any claim under the ADA must be dismissed.

## IV. Opportunity to Amend

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). In this case, the court finds that any attempt of the plaintiff to amend this complaint would be futile, and he would still be unable to state a federal claim.[6]

---

[6] This court certainly does not condone any of the conduct claimed by plaintiff. The court only finds that plaintiff does not state constitutional claims under section 1983 that are properly in federal court. If plaintiff believes that he was assaulted by Mr. Wood, he may bring an action in state court or complain to the OASAS.

14

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's application to proceed IFP (Dkt. No. 2) is **GRANTED FOR PURPOSES OF FILING ONLY**, and it is

**RECOMMENDED**, that this action be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) for failure to state a claim.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 1, 2013

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge