**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KEVIN V. BYNG,,**

                                **Plaintiff,**

      **vs.**                                        **6:13-cv-733**
                                                   **(MAD/ATB)**

**DELTA RECOVERY SERVICES, LLC and**
**ROBERT WOOD,** *owner of Delta House,*

                                **Defendants.**
_____

**APPEARANCES:**                     **OF COUNSEL:**

**KEVIN V. BYNG**
**11-B-2816**
Attica Correctional Facility
Box 149
Attica, New York 14011
Plaintiff *pro se*

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiff brought this suit alleging that Defendants violated his constitutional right to be free from cruel and unusual punishment, his constitutional right to Equal Protection, and his rights under the Americans with Disabilities Act. *See* Dkt. No. 1 at ¶¶ 35-37. In a July 1, 2013 Order and Report-Recommendation, Magistrate Judge Baxter recommended that the Court dismiss the complaint in its entirety, with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

    Currently before the Court are Plaintiff's motion to amend the complaint and his objections to Magistrate Judge Baxter's Order and Report-Recommendation. *See* Dkt. No. 7.

## II. BACKGROUND

**A.      The complaint**

Plaintiff alleges that he is "physically disabled," has mental health problems, and a history of alcohol and cocaine abuse.  *See* Dkt. No. 1 at ¶¶ 4-5.  Plaintiff alleges that, on January 4, 2011, while he was on parole, he successfully completed a six-month, intensive, residential, inpatient, substance abuse program at Insight House in Utica, New York.  *See id.* at ¶ 5.  Plaintiff states that, as of January 4, 2011, he was "doing well," and he "agreed" to continue his treatment at Defendant Delta Recovery Services, LLC ("Delta House").  He entered Delta House that same day.  *See id.* at ¶ 6.

Plaintiff alleges that Defendant Delta House is a New York State Office of Alcoholism and Substance Abuse Services ("OASAS") "licensed treatment facility," having obtained its license in 2005.  *See id.* at ¶ 7.  Defendant Delta House was certified as a Congregate Care Level 2 ("CCL2") Residential Treatment Program facility, which means that it is required to provide residents with daily housing, meals, counseling, and medical/mental health services "like Insight House."  *See id.*  The complaint contains several paragraphs discussing how Delta House allegedly overcharges for rent, based upon its license and upon the services it renders to residents. *See id.* at ¶¶ 8-14.

The crux of the complaint is that on January 13, 2011, Defendant Wood (the alleged owner of Delta House) came into Plaintiff's room to tell Plaintiff that he would give him a lamp. *See id.* at ¶ 15.  Plaintiff states that he then "went and took a shower" and came back into the room, naked.  *See id.*  Defendant Wood apparently came back into Plaintiff's room with the lamp, and when he saw that Plaintiff was naked, closed the door, unzipped his pants, pulled out his penis, and told Plaintiff to "'suck it.'" *See id.* at ¶ 16.  When Plaintiff refused, Defendant Wood

threatened to call "parole" and report that Plaintiff had violated his parole by drinking alcohol so that he would be sent back to prison. *See id.* at ¶ 16. Due to this threat and the fear of returning to prison, Plaintiff "reluctantly . . . masturbated him" with his right hand. *See id.* at ¶ 17. Defendant Wood allegedly told Plaintiff that if he told anyone about the incident, Defendant Wood would call the police and parole, claim that Plaintiff was drinking, and that he "assaulted [Wood]." Defendant Wood told Plaintiff that he would go back to prison where he belonged. *See id.*

Plaintiff claims that he was so "ashamed, embarrassed, and worried," that he got dressed and immediately left Delta House, forgetting his keys. *See* Dkt. No. 1 at ¶ 18. Plaintiff states that he went to the bank, withdrew money, and unfortunately relapsed, drinking alcohol and using cocaine. *See id.* Plaintiff claims that because he forgot his keys to Delta House, he could not get back in, and no one would answer the door, so that he was "homeless, freezing in the cold, [and] without his mental health medications." *See id.* at ¶ 19. Plaintiff states that he spent most of his money and kept using cocaine and drinking for the next few days. *See id.*

On January 17, 2011 plaintiff walked over to Delta House, and Defendant Wood's assistant let him in, but told plaintiff that he was "kicked out per Mr. Wood." *See id.* at ¶ 20. Plaintiff states that the assistant then called Mr. Wood on the telephone. *See id.* Plaintiff spoke to Defendant Wood, asked him for the balance of Plaintiff's unused rent, and asked Defendant Wood where Plaintiff "was supposed to go." *See id.* Plaintiff claims that Defendant Wood told him that he could not have his money, that if he caused any trouble Defendant Wood would call the police, and he did not care where Plaintiff went. *See id.* Plaintiff states that Delta House never called "parole" to tell them that Plaintiff had been evicted, nor was Plaintiff told that "there was a Utica Rescue Mission Emergency Shelter . . . as required." *See id.*

Plaintiff states that he took his clothes, but claims that Defendant Wood took his keys, including the key to his post office box, and his mental health medications.  *See id.* at ¶ 21. Thereafter, Plaintiff claims that he was homeless, afraid, hungry, anxiety ridden, confused, and depressed.  He spent the last of his money, continuing to drink and use cocaine for days.  Plaintiff had no medication and "virtually no sleep."  As a result, he "regrettably committed a stupid, non-violent substance abuse larcenious [sic] offense on January 20, 2011 to get more money for cocaine."  *See id.*

Plaintiff states that he was arrested on the same day by the Utica Police Department and "parole."  *See id.* at ¶ 22.  According to Plaintiff, he was "violated" for "allegedly leaving Delta House."  He was sent to Groveland Correctional Facility for ninety (90) days.  Plaintiff claims that he could not "get out of his head" everything that Defendant Wood had done to him, "especially on January 13, 2011."  *See id.* at ¶ 23.  Plaintiff claims that when he "came home" after the ninety day period of incarceration, he "eventually relapsed again and remorsefully committed another substance abuse related offense."  *See id.*

Plaintiff claims that his lawyer was "lazy, ineffective, and did not get [him] a Drug Court plea."  *See id.* at ¶ 24.  Plaintiff apparently pled guilty to the January 20, 2011 "non-violent substance abuse related offense" that he "committed because of Mr. Wood[.]"  *See id.*  Plaintiff then engages in some calculations regarding the amount of time he had left on his original sentence and the consecutive time he received on the new sentence and claims that, because the resulting time he had left to serve was greater than seven years, he was "unfortunately sent to the infamous Attica Correctional Facility," a maximum security facility, instead of being sent to a medium security facility like Groveland.  *See id.* at ¶¶ 24-26.

4

Plaintiff describes his incarceration in Attica, stating that he has had to live in a dirty, germ-ridden cell, with a "vicious murderer and serial killer."  *See id.* at ¶¶ 27-28.  He also alleges that he has been regularly harassed, threatened, and was ultimately assaulted by "a pack" of corrections officers.  *See id.* at ¶¶ 28-29.  Plaintiff claims that this is "all a direct result of Delta House's overall egregious conduct."  *See id.* at ¶¶ 26-29.

The complaint contains three causes of action: (1) Defendants' conduct violated Plaintiff's constitutional right to be free from cruel and unusual punishment by violating New York State Mental Hygiene Law §§ 19.07(e), 32.07(a) and OASAS Operating Regulations §§ 819.2(a)(3), (b)(1), (b)(5), (b)(8); 853.20(a), (c)(2), (c)(5); 853.28(a)(1), (a)(1)-(3), (a)(6)-(8), (a)(14), (a)(16); (2) Defendants violated Plaintiff's constitutional right to Equal Protection; (3) Defendants' conduct violated Plaintiff's rights under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*  Plaintiff seeks $150,000.00 in damages.

**B.     Magistrate Judge Baxter's Order and Report-Recommendation**

In his July 1, 2013 Order and Report-Recommendation, Magistrate Judge Baxter recommended that the Court dismiss the complaint in its entirety, with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).  Specifically, Magistrate Judge Baxter found that Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 against Defendants should be dismissed because Defendant Delta House and its employees are not state actors.  Rather, Defendant Delta House is a private corporation that is merely licensed by the State.  *See* Dkt. No. 5 at 8-9.  The recommendation distinguished between facilities, such as Defendant Delta House, which treat patients for substance abuse as a condition of their parole or criminal guilty plea, with privately run prisons, which fulfill a function that is the "'exclusive prerogative of the state.'"  *See id.* at 9 (quotation

omitted).  Further, the recommendation noted that Plaintiff had not alleged that he was being held in Defendant Delta House on an involuntary basis, but rather he agreed to go to Delta House, was paying rent for the privilege of staying there, and had keys to the house so that he could come and go as he pleased.  *See id.* at 10-11.

As to Plaintiff's claims brought pursuant to the ADA, Magistrate Judge Baxter found that Plaintiff failed to state a plausible claim under either Title II or Title III.  *See id.* at 13.  The recommendation found that, since Title III does not permit money damages and because Plaintiff cannot seek injunctive relief because he no longer resides at Defendant Delta House, the claim should be dismissed.  *See id.*  Further, Magistrate Judge Baxter found that, because Defendant Delta House is not a "public entity," as that term is defined in the statute, he cannot succeed.  *See id.*  Finally, the recommendation found that, even assuming that Plaintiff was a "qualified" individual with a disability for purposes of the statute, he still fails to state a claim under the ADA because there is no allegation that any of the alleged behavior was in any way related to Plaintiff's alleged disability.  *See id.* at 14.

**C.      Plaintiff's objections and motion to amend**

In his objections and motion to amend, Plaintiff claims that, because of his *pro se* status, limited access to the prison law library, he did not realize that he was required to allege facts to support the fact that Defendant Delta House is a "state actor."  *See* Dkt. No. 7 at ¶ 3.  Plaintiff claims that, upon completing his stay at Insight House, "their recommendation/mandated by Parole was for me to be sent directly to Delta House.  Like Insight House, it was involuntary; if I did not agree, I would be violated by Parole, sent back to prison, and in fact was for leaving after the deviant forced masturbation."  *See id.* at ¶ 5 (emphasis in original).  Specifically, Plaintiff

alleges that the "NYS Div. of Parole <u>sent me</u> to Insight House, who in turn <u>sent me</u> to Delta

House – this is a fact, supported by evidence I have as well."  *See id.* at ¶ 9 (emphasis in original).

Further, Plaintiff alleges that Insight House, "a licensed NYS OASAS . . . residential treatment

facility[,]" was found to be a state actor in *Byng v. Fuller*, No. 09-cv-1008 (N.D.N.Y. 2010).  *See*

Dkt. No. 7 at ¶¶ 3, 6.  Since Insight House and Delta House are "identical in all aspects," Plaintiff

argues that Magistrate Judge Baxter erred in finding that Delta House was not a state actor.  *See*

*id.* at ¶ 6.

Plaintiff asks the Court's permission to amend his complaint to include these facts.

Moreover, Plaintiff wishes to include additional Defendants in the amended complaint for their

alleged participation in violations of his Fourth, Eighth and Fourteenth Amendment rights.  *See*

*id.* at ¶ 14.


# III. DISCUSSION

## A.     Initial Screening

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff

seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court

determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on

which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune

from such relief."  28 U.S.C. § 1915(e)(2).  Therefore, the Court must determine whether Plaintiff

may properly maintain his complaint before permitting him to proceed.  Although a court has the

duty to show liberality towards *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir.

1990), and should exercise "extreme caution . . . in ordering *sua sponte* dismissal of a *pro se*

complaint *before* the adverse party has been served and both parties (but particularly the plaintiff)

have had an opportunity to respond," *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), a court also has the responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis.

"Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(e) is appropriate to prevent abuses of the process of the court," *Nelson v. Spitzer*, No. 9:07-CV-1241 (TJM/RFT), 2008 WL 268215, *1 n.3 (N.D.N.Y. Jan. 29, 2008) (citation omitted), as well as "to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Id.* at 325.

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when the plaintiff paid the filing fee).

When reviewing a complaint, the court may also look to the Federal Rules of Civil Procedure. Rule 8 provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

Despite the recent tightening of the standard for pleading a claim, complaints by *pro se* parties continue to be accorded more deference than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation omitted).  As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to "'construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002) (quotation omitted).

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citations omitted).  Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

**B.       Review of a magistrate judge's report-recommendation**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report of specified proposed findings or recommendations to which objection in made."  28 U.S.C. § 636(b)(1) (2006).

However, when a party files "[g]eneral or conclusory objection or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted).  After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

## C.    State action

"To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

As to the second requirement, "[t]he ultimate issue in determining whether a person [may bring] suit under [section] 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'" *Horvath v. Westport Library Ass'n*, 362 F.3d 147, 151 (2d Cir. 2004) (quoting *Rendell–Baker v. Kohn*, 457 U.S. 830, 838, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982)).  "Because the boundaries of the Constitution's protections, which may be invoked only against the government, 'cannot be a simple line between States and people operating outside formal governmental organizations, . . . the deed of an ostensibly private organization or individual is to be treated sometimes as if a State had caused it to be performed." *Bolmer v. Oliveira*, 570 F. Supp. 2d 301, 319-20 (D. Conn. 2008) (quoting *Brentwood Acad. V. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 295, 121 S. Ct. 924, 148 L. Ed. 2d 807 (2001)).

"[T]here is no single test to identify state actions and state actors." *Id.* (quoting Brentwood, 531 U.S. at 294).  Rather, "a court may use several approaches in determining whether state action is present," including the public function, state compulsion, nexus, and joint action tests. *McCullum v. City of Philadelphia*, No. CIV. A. 98–5858, 1999 WL 493696, *2 (E.D. Pa. July 13, 1999) (citing *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 939, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982)).

Numerous courts have held that privately run prisons are state actors for section 1983 purposes pursuant to the public function test.  *See Rosbororough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003); *Skelton v. Pri–Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991); *Coleman v. LaSalle Correctional Cntr.*, No. 08-cv-0064, 2008 WL 2465989, *4 (W.D. La. May 29, 2008); *McCullum*, 1999 WL 493696, at *2; *see also Malesko*, 534 U.S. at 71, n.5 (suggesting that a state prisoner may sue a private prison for deprivation of constitutional rights).  Courts have held that corporations that run private jails act under color of state law because, "[t]he function of incarcerating people, whether done publicly or privately, is the exclusive prerogative of the state." *McCullum*, 1999 WL 493696, at *3 (quoting *Giron v. Corrections Corp. of Am.*, 14 F. Supp. 2d 1245, 1249 (D.N.M. 1998)).

For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when:

> (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

*Sybalski v. Independent Group Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quotation omitted).

In his Order and Report-Recommendation, Magistrate Judge Baxter found that licensing by the State of New York is insufficient to establish that a private entity is a state actor. *See* Dkt. No. 5 at 8. Magistrate Judge Baxter found that Defendant Delta House was similar to the private rehabilitation center in *Velez v. SES Operating Corp.*, No. 07 Civ. 10946, 2008 WL 2662808, *2 (S.D.N.Y. July 3, 2008), which was found to not be a state actor. *See id.* at 10. The recommendation noted that Plaintiff stated in the complaint that, after completing his six-month stay at Insight House, he then "agreed" to go to Defendant Delta House, which clearly demonstrates that he was not involuntarily sent to Delta House. *See id.* at 10-11. Moreover, the court noted that Plaintiff was paying rent to stay at Defendant Delta House, that he had keys to the house so that he could come and go as he pleased, and that he had a bank account outside Delta House from which Plaintiff claims that he withdrew his money to purchase alcohol and cocaine after the alleged incident with Defendant Wood. *See id.* at 11.

In his objections and motion to amend, however, Plaintiff argues that he was involuntarily sent to Defendant Delta House and that, if he did not agree to reside at Delta House, he "would be violated by Parole [and] sent back to prison[.]" *See* Dkt. No. 7 at ¶ 5. Moreover, Plaintiff claims that Insight House, which is identical in all respects to Delta House, was deemed a "state actor" in a lawsuit he previously brought against that institution. *See id.* at ¶ 6 (citing *Byng v. Fuller*, No. 09-cv-1008 (N.D.N.Y. 2010)).

First, contrary to Plaintiff's assertions, Insight House was not "deemed a 'state actor'" in *Byng v. Fuller*. In that case, Plaintiff filed suit against the medical director and vice president of Insight House Chemical Dependency Services. *See Fuller*, No. 6:09-cv-1008, Dkt. No. 1. The

complaint alleged that the defendants "repeatedly and indifferently refused Plaintiff's verbal request, written requests, and grievances, denying Plaintiff's inherent NYS OASIS, 42 Code of Federal Regulations Section 2.23, and HIPAA – The Privacy Rules rights to review, inspect and copy, if necessary, any of my health information related records – medical and counseling." *See id.* at ¶ 6.  While a motion to dismiss for lack of subject matter was pending, the parties agreed to participate in the Assisted Mediation Pilot Program.  *See* Dkt. No. 32.  Thereafter, the parties entered into a settlement agreement and Plaintiff agreed to voluntarily dismiss the case with prejudice.  *See* Dkt. No. 34.  As a result, the court never issued a decision on the defendants' motion to dismiss, in which the defendants had argued that Insight House was **NOT** a state actor for purposes of section 1983.  *See* Dkt. No. 24-2.  As such, Plaintiff is incorrect in his assertion that Insight House was deemed a state actor in his previous action.  Rather, the parties entered into a settlement agreement, thereby relieving the court of its obligation to determine whether Insight House was a state actor for purposes of section 1983.

Second, Plaintiff has failed to allege any facts in his objections and motion to amend that would plausibly support his position that Defendants are state actors for purposes of section 1983. Although Plaintiff now alleges in his objections that he was involuntarily sent to Delta House after he completed his six-month stay at Insight House, this statement is in direct contradiction to his allegation in the complaint in which he states that he "agreed" to go to Delta House because he "was doing really well."  *Compare* Dkt. No. 1 at ¶ 6; *with* Dkt. No. 7 at ¶ 5.  Even assuming that Plaintiff was forced to reside at Delta House and participate in their treatment programs, such a requirement as a condition of parole, without more, does not create state action for purposes of section 1983 on the part of the residential facility providing the treatment.

Plaintiff claims that Insight House and Delta House are identical in all material respects. Plaintiff claims that he was charged rent for the time he spent at Delta House.  According to their website, Insight House charges "rent" to individuals who reside there.  Moreover, both Insight House and Delta House are non-profit, private institutions.  Although Delta House accepts referrals from government entities, Plaintiff's allegations make clear that when a resident commits a program violation or is removed from housing, Delta House does not have the authority to return that resident to prison; rather, they notify that individual's parole officer or other governmental entity, who then, at the officer or entity's discretion, files a petition seeking revocation of parole.  *See Smith v. Devline*, 239 Fed. Appx. 735, 736 (3d Cir. 2007).

In *Smith*, the plaintiff sued a residential treatment facility (Renewal) where he was sent upon being paroled.  Finding that the plaintiff failed to establish that Renewal was a state actor for purposes of section 1983, the court found the following facts relevant:

> Renewal is a non-profit corporation that provides treatment services to offenders in the criminal justice system to facilitate their successful re-entry into society.  Although Renewal contracts with various government entities, some residents of the program pay the cost of the program without any governmental assistance.  Renewal is governed by a board of trustees, who volunteer for the position and are elected by the board of directors.  None of the members of the board of directors are appointed by a governmental entity.  The policies and procedures that govern the residents of the program and the employees of Renewal are created and adopted by Renewal and are not set by a governmental entity.  Renewal has full discretion over who is admitted into its program; a governmental entity cannot force or require Renewal to accept any particular person into its program.  When a resident commits a program violation, Renewal does not have the authority to return the resident to prison.  Renewal is required to notify the proper governmental authority, who then determines whether the resident should be returned to prison or remain in the program.

*Smith*, 239 Fed. Appx. at 736.

14

Further, Courts have consistently held that the provision of transitional housing to former inmates under parole supervision is not a function that has traditionally been the exclusive prerogative of the state.  *See Moore v. Broady*, No. 10-CV-3250, 2010 WL 3125008, *5 (E.D.N.Y. Aug. 06, 2010) (citations omitted); *see also Rendell–Baker*, 457 U.S. at 842 ("That a private entity performs a function which serves the public does not make its acts state action"); *Young v. Halle Hous. Assoc., L.P.*, 152 F. Supp. 2d 355, 365 (S.D.N.Y. 2001) ("Although the State of New York has a constitutional interest in providing housing for the needy, the provision of housing, for the poor or for anyone else, has never been the exclusive preserve for the state, but has been left to a regulated, and occasionally subsidized, private marketplace"); *Williams v. Crawford*, No. 88–cv–0080 (TCP), 1988 WL 52198, *2 (E.D.N.Y. May 13, 1988) (holding that state regulation and state funding would be insufficient to make a private residential treatment center or its employees state actors under § 1983).  Finally, as Magistrate Judge Baxter correctly found, the freedom Plaintiff enjoyed at the facility, the fact that he could leave the facility of his own volition, and the fact that he was required to pay rent to reside there all support the fact that Defendant Delta House is not a state actor for purposes of section 1983.  *See Bagwell v. Community Programs, Inc.*, No. 11-10796, 2011 WL 1447543, *1 (E.D. Mich. April 13, 2011) (citations omitted); *Squires v. Cenikor Inc.*, No. H-06-0243, 2006 WL 6598181, *1 (S.D. Tex. Jan. 25, 2006); *Smith*, 239 Fed. Appx. at 736.

Based on the foregoing, the Court finds that Magistrate Judge Baxter correctly determined that Plaintiff's complaint should be dismissed with prejudice as to his claims brought pursuant to 42 U.S.C. § 1983.

**D.      Plaintiff's ADA Claims**

Plaintiff does not object to Magistrate Judge Baxter's recommendation to dismiss any claim Plaintiff brought pursuant to Title III of the ADA.  Having reviewed the Order and Report-Recommendations finding as to Title III, the Court finds that Magistrate Judge Baxter correctly determined that, because Plaintiff no longer resides at Delta House and because Title III only authorizes private action for injunctive relief, this claim should be dismissed with prejudice.  *See Krist v. Kolombos Rest., Inc.*, 688 F.3d 89, 94-95 (2d Cir. 2012) (citation omitted).

As to Plaintiff's Title II claim, in his objections he asserts the following: "since I collect SSI, alone, I am in fact a qualified disabled person, was discriminated against by all that happened to me at Delta House, in a public entity's program, and that Delta House is in fact a public entity . . . to be supported by evidence submitted to your Court."  *See* Dkt. No. 7 at ¶ 13. First, Plaintiff's conclusory assertion that Defendant Delta House is a public entity is without merit.  The ADA defines "public entity" as (1) a State or local government; (2) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (3) the National Railroad Passenger Corp., and any commuter authority as defined in section 24102(4) of Title 49 of the United States Code.  *See* 42 U.S.C. § 12131(1)(A)-(C).  Magistrate Judge Baxter correctly determined that Defendant Delta House does not fall within that definition; and, therefore, Plaintiff's claim brought pursuant to Title II claim of the ADA must fail.  *See* Dkt. No. 5 at 13.  Finally, even assuming that Defendant Delta House is a public entity as that term is defined and that Plaintiff is a qualified individual with a disability under the ADA, Plaintiff has failed to allege in either his complaint or objections that Defendants' alleged conduct was in any way caused by, or related to, Plaintiff's alleged disability.  *See Klaes v. Jamestown Bd.*

*of Public Utilities*, No. 11-CV-606, 2013 WL 1337188, *12 (W.D.N.Y. Mar. 29, 2013) (citation omitted).

Based on the foregoing, the Court finds that Magistrate Judge Baxter correctly recommended that the Court should dismiss Plaintiff's ADA claims with prejudice.

## IV. CONCLUSION

After carefully considering Magistrate Judge Baxter's Report-Recommendation, Plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's July 1, 2013 Order and Report-Recommendation is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED with prejudice**; and the Court further

**ORDERS** that Plaintiff's motion to amend the complaint (Dkt. No. 7) is **DENIED** as futile; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  July 29, 2013
      Albany, New York

Mae A. D'Agostino
U.S. District Judge